IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Mark Ankcorn**, on behalf of himself and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>**Kohl's Corporation**, a Wisconsin corporation,<br><br>    Defendant. | Case No. 1:15-cv-1303<br><br>**Complaint**<br><br>Class Action<br><br>Jury Trial Demanded |

Plaintiff Mark Ankcorn, ("Plaintiff"), individually and on behalf of all others similarly situated, makes the following allegations and claims against Kohl's Corporation, upon personal knowledge, investigation of his counsel, and on information and belief.

1. This action seeks redress for business practices that violate the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA").

2. This Court has jurisdiction to grant the relief sought by Plaintiff pursuant to 47 U.S.C. § 227(b), 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331.

3. Venue is proper in this district as Defendant resides within the district and does substantial business within the district. Defendant owns and operates sixty-six department stores in the State of Illinois, about half of which are located in this district, totaling nearly five million square feet of selling space according to its most-recent

annual report. Based on its net sales per square foot, these stores generate in excess of $1.1 billion in revenue for Defendant. Its operating center in Ottawa, Illinois, services approximately one hundred and fifty-five (155) stores in seven different states.

## Parties

4. Plaintiff Mark Ankcorn, is a natural person who resides in San Diego, California. Plaintiff is the regular and exclusive user of a cellular telephone with service registered in his name. Pursuant to the terms of service, the account is charged for each call within the meaning of 47 U.S.C. § 227(b)(1)(A)(iii).

5. Defendant Kohl's Corporation ("Kohl's") is a corporation organized under the laws of the State of Wisconsin.

## Facts

6. Directly as well as through its subsidiaries, contractors and agents, Defendant employs hundreds of persons at various call centers throughout the country. These calling centers use automatic telephone dialing systems and computerized account information to track, record, and maintain the hundreds of thousands of accounts serviced by Defendant

7. Defendant's regular business practices include making repeated phone calls to persons it believes responsible for paying past-due accounts.

8. On or around July 29, 2014, Defendant began calling Plaintiff on his cellular telephone using an automatic telephone dialing system. At no time did Plaintiff give his consent for Defendant to place such calls to him. At no time did Plaintiff engage in any transaction with Defendant or do business with Kohl's in any way.

9. Between July 29, 2014 and October 23, 2014, inclusive, Defendant placed at least one hundred and five calls at different times to Plaintiff's cellular telephone using a pre-recorded message with an artificial or computerized voice.

10. Plaintiff answered numerous calls from Defendant and heard a pre-recorded message with an artificial or computerized voice. Based on the content of Defendant's pre-recorded messages, Plaintiff believes that Defendant was seeking to collect on a consumer loan extended to another person.

11. The automated messages included an option to speak with a live representative by pressing a number on the keypad. Plaintiff tried this option several times in an effort to inform Defendant that they were calling a wrong number and to request that the calls cease. Upon selecting the option, the line disconnected.

12. On the occasions that Plaintiff was able to speak with a live representative, Plaintiff requested that Defendant stop calling. Plaintiff also attempted to determine who the caller was, yet Defendant refused to identify themselves.

13. Each of the calls placed by Defendant was made by means of an automatic telephone dialing system as defined by the Federal Communications Commission.

14. A significant portion of Defendant's business operations includes servicing consumer revolving credit accounts that are in default. Defendant's regular business practices include making repeated phone calls, as well as sending notices, statements, bills, and other written correspondence to persons it believes responsible for paying past-due accounts.

15. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing and debt collection practices. The TCPA regulates, *inter alia*, the use of automated dialing systems. Specifically, section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. The TCPA's definition of an automatic telephone dialing system includes a "predictive dialer." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638-9 (7th Cir. 2012).

16. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

17. On January 4, 2008, the FCC issued a Declaratory Ruling confirming that autodialed calls and calls using an artificial voice or pre-recorded message to a wireless number by a creditor or on behalf of a creditor are permitted only if the calls are made with the "prior express consent" of the called party. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("FCC

Declaratory Ruling"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

18. The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶10).

19. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff gave express consent to Defendant to use an autodialer to call his cell phone within the meaning of the statute. *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

20. Plaintiff never listed his cellular telephone number in or on any documents during a transaction with Defendant, nor did he subsequently give his express consent to receive calls on his cellular telephone. At no time did he consent to receiving calls using an artificial voice.

21. In calling Plaintiff on his cellular telephone line multiple times at various times per day using an ATDS and without his consent, Defendant violated 47 U.S.C. § 227(b).

## Class Action Allegations

22. Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and on behalf of all others similarly situated.

23. The proposed TCPA Class that Plaintiff seeks to represent is defined as follows:

>All persons who had or have a number assigned to a cellular telephone service, which number was called by Defendant using an automatic telephone dialing system and/or an artificial or prerecorded voice from four years prior to the date of filing through the date of trial. Excluded from the class are persons who Defendant called for emergency purposes and persons who voluntarily provided their cellular telephone numbers to Defendant during the transaction that resulted in the debt owed.

24. Collectively, these persons will be referred to as "Class members." Plaintiff represents, and is a member of, the proposed Class. Excluded from the Class are Defendant and any entities in which Defendant or their subsidiaries or affiliates have a controlling interest, Defendant's agents and employees, the judicial officer to whom this action is assigned and any member of the court staff and immediate family, and claims for personal injury, wrongful death, and emotional distress.

25. Plaintiff does not know the exact number of members in the Class, but based upon Defendant's public statements regarding its business in the United States and investigation of his counsel, Plaintiff reasonably believes that members of the proposed class numbers in the tens of thousands, if not more. The estimated Class size includes consumers who are obligated on debts serviced by Defendant, as well as persons who co-signed for those debts, and all other persons whom Defendant or their affiliates, agents, contractors, or employees dialed (or mis-dialed).

26. There are questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including, whether Defendant made any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone

dialing system and/or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service in violation of the TCPA.

27. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

28. Plaintiff will fairly and adequately protect the interests of the Class, and has retained attorneys experienced in class and complex litigation.

29. A class action is superior to all other available methods for the fair and efficient adjudication of the controversy for the following reasons:

    a. It is economically impractical for members of the Class to prosecute individual actions;

    b. The Class is readily definable; and

    c. Prosecution as a class action will eliminate the possibility of repetitious litigation.

30. A class action will cause an orderly and expeditious administration of the claims of the Class. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

31. Class wide relief is essential to compel Defendant to comply with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the statutory damages in an individual action for violation of the TCPA is small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because

the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

32. Defendant has acted on grounds generally applicable to the members of the Class, thereby making final injunctive relief and corresponding declaratory relief with the respect to the Class as a whole appropriate. Moreover, the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

### First Claim for Relief

33. Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

34. The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

35. As a result of Defendant's negligent violations of the TCPA, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call placed in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

36. Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such negligent conduct that violates the TCPA by Defendant in the future.

### Second Claim for Relief

37. Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

38. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing or willful, or both, violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

39. As a result of Defendant's knowing and willful violations of the TCPA, Plaintiff and each member of the Class are entitled to treble damages of up to $1,500 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

40. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting such willful conduct that violates the TCPA by Defendant in the future.

## Jury Trial Demand

41. Plaintiff demands a jury trial on each of the causes of action set forth above, including the amount of statutory damages.

## Prayers for Relief

Wherefore, Plaintiff respectfully prays that judgment be entered against Defendant Kohl's Corporation, for the following:

1. An injunction against further violations;
2. Damages pursuant to 47 U.S.C. § 227(b)(3);
3. Costs of suit reasonable attorneys' fees as part of a common fund, if any; and
4. Such other and further relief as the Court may deem just and proper.

Dated: February 11, 2015     LAW OFFICES OF ROBERTO ROBLEDO

*/s/ Roberto Robledo*

Roberto Robledo (260041)
*roberto@robertorobledo.com*
LAW OFFICES OF ROBERTO ROBLEDO

9845 Erma Road, Suite 300
San Diego, California 92131
(619) 500-6683 phone
(619) 810-2980 fax

Local Office:
332 S. Michigan Ave. Suite 1032-R661
Chicago, Illinois 60608-2013

Attorneys for Plaintiffs