**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARK ANKCORN, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 15-cv-1303 |
| KOHL'S CORPORATION, | ) ) | Judge Robert M. Dow, Jr. |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Kohl's motion to continue the stay and to file *instanter* supplemental authority [55]. For the reasons stated below, the Court grants Defendant's motion [55] to file *instanter* supplemental authority and to continue the stay pending a decision by the D.C. Circuit in *ACA International v. FCC*, No. 15-1211 (D.C. Cir., argued Oct. 19, 2016). The status hearing set for February 21, 2017 is stricken and no appearances are necessary. The parties are directed to promptly advise the Court when the D.C. Circuit issues its ruling in *ACA International v. FCC* and to file within 14 days of that decision a brief of no more than 10 pages explaining how the ruling affects their respective positions in this case. The Court will set this matter for further status after reviewing the D.C. Circuit's decision and the parties' supplemental briefs.

**I.   Background**

On February 11, 2015, Plaintiff Mark Ankcorn filed this putative class action lawsuit against Defendant Kohl's for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"). [1.] Plaintiff alleges that Defendant has received in excess of one hundred calls from Defendant on his cellular phone, without consenting to receive the alleged calls. Plaintiff further alleges that Defendant has violated the TCPA by engaging in a

1

widespread and systematic practice of placing calls to consumers on their cell phones, using autodialer technology, without prior express consent. The proposed class includes all persons within the U.S. who were called on his or her cell phone by Defendant using an automatic telephone dialing system without prior consent. [See 1, at ¶ 23.]

Defendant alleges that in April 2014, a Kohl's credit card holder provided the telephone number at issue to Defendant on a Kohl's credit card application and consented to being contacted by telephone regarding account related issues. [61, at 4.] After opening a Kohl's credit card, the cardholder made purchases on her card but never made any credit card payments to Defendant. Defendant argues that any calls that it made to the number provided were permitted pursuant to the cardholder's consent and thus in compliance with the TCPA. Defendant further argues that it did not know, and had no reason to know, that the number provided by the cardholder was reassigned to Plaintiff or incorrectly or falsely provided by the cardholder in the first instance. [*Id.* at 4–5.]

On December 30, 2015, Defendant filed a motion to stay this action [38]. On September 21, 2016, the Court granted Defendant's motion to stay the proceedings pending the disposition by the Judicial Panel on Multidistrict Litigation ("JPML") of Plaintiff's motion to transfer related actions for coordinated pretrial proceedings. [49.] On October 4, 2016, the JPML declined to consolidate these actions. [54.] On October 18, 2016, Defendant filed a motion to continue the stay pending a decision by the D.C. Circuit in *ACA International v. FCC*, No. 15-1211 (D.C. Cir., argued Oct. 19, 2016), which is currently before the Court [55.] Defendant argues that the pending appeal in the D.C. Circuit will resolve two issues that are relevant to and possibly determinative of the claims and defenses in this case.

The D.C. Circuit case, *ACA International v. FCC*, is an appeal from the Federal Communications Commission's July 10, 2015 Omnibus Declaratory Ruling and Order. In this

Declaratory Ruling, the FCC addressed, among other things, the TCPA's exemption from liability for calls made "with the prior express consent of the called party." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7965 (2015). The FCC considered two issues which are relevant to the case at hand. First, the FCC considered whether the statutory term "called party"[1] includes an original subscriber to a cell phone number who provided his or her telephone number to a caller, consented to receive calls, and was the intended recipient of calls, even if the cell phone number had been subsequently reassigned to a new subscriber without the caller's knowledge. *Id.* at 7999–8006. The FCC concluded that "'called party' is best understood to mean the subscriber to whom the dialed wireless number is assigned because the subscriber is 'charged for the call' and * * * is the person whose privacy is interrupted by unwanted calls." *Id.* at 8001.

Second, the FCC considered whether a safe harbor exists for callers who call a cell phone number when the caller had obtained consent to call from the previous subscriber and did not know the cell phone number had been reassigned. *Id.* at 8006–10. The FCC concluded that after the first call, any subsequent calls will incur TCPA liability, explaining that "the one-call window provides a reasonable opportunity for the caller to learn of the reassignment, which is in effect a revocation of consent to be called at that number" and that "[o]ne call represents an appropriate balance between a caller's opportunity to learn of the reassignment and the privacy interests of the new subscriber to avoid a potentially large number of calls to which he or she

---

[1] The TCPA provides that:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—(A) to make any call (other than a call made for emergency purposes *or made with the prior express consent of the called party*) using any automatic telephone dialing system or an artificial or prerecorded voice * * *

47 U.S.C. § 227(b)(1) (emphasis added).

never consented." *Id.* at 8009. The FCC Commissioners were divided over these issues, and the Declaratory Ruling drew multiple dissents. *Id.* at 7962.

After the FCC released its Declaratory Ruling, nine companies filed petitions in the D.C. Circuit seeking review of the FCC's Declaratory Ruling pursuant to the Administrative Procedures Act, 47 U.S.C. § 402 ("the Hobbs Act"), which sets forth the procedural process for anyone seeking to "enjoin, set aside, annul, or suspend any order of the [FCC]." 47 U.S.C. § 402(a). These petitions were consolidated, and briefing was completed by February 2016. Oral argument took place in the D.C. Circuit on October 19, 2016.

## II. Legal Standard

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Amer. Co.*, 299 U.S. 248, 254 (1936). In deciding whether to enter such a stay, courts consider the following factors: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (2) whether a stay will simplify the issues in question and streamline the trial, and (3) whether a stay will reduce the burden of litigation on the parties and on the court. *Genzyme Corp. v. Cobrek Pharm., Inc.*, 2011 WL 686807, at *1 (N.D. Ill. Feb. 17, 2011). The party requesting stay "bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255).

## III. Analysis

The Court concludes that a stay is warranted. First, a stay will simplify the issues in question and streamline the proceedings in this court and thus reduce the burden of litigation on the parties and on the court because two issues under consideration by the D.C. Circuit— (1) whether the statutory term "called party" under the TCPA includes the "intended recipient"

4

of a telephone call; and (2) whether a safe harbor exemption for unintentionally calling the wrong person is limited only to the first such call or extends to other calls—are relevant to Defendant's potential liability in the case at hand. If the D.C. Circuit holds that the statutory term "called party" means the intended recipient of the call or that the safe harbor provision extends beyond the first call, the court's ruling will affect Defendant's defenses to Plaintiff's claims. Additionally, the D.C. Circuit's ruling may affect the size of the potential class. At the very least, the rulings of the D.C. Circuit may impact the size and scope of the discovery in this case. A stay will also promote judicial efficiency and support a uniform, nationwide interpretation of these TCPA issues.

Further, a stay will not unduly prejudice Plaintiff or the putative class. This case is in an early stage of litigation, and the delay caused by the stay will likely be insubstantial giving that briefing and oral argument have already been completed in the D.C. Circuit. See *Coatney v. Synchrony Bank*, 2016 WL 4506315, at *2 (M.D. Fla. Aug. 2, 2016) (granting a stay and explaining that "[i]mportantly, Plaintiff has not shown that he will be prejudiced by a stay at such an early stage in the litigation. It is not likely the stay will be lengthy given that *ACA International* has been fully-briefed as of February 2016 and the potential prejudice is minimal"). Additionally, Plaintiff does not claim that he continues to receive telephone calls from Defendant, so there is no risk of ongoing harm to Plaintiff. See *Matlock v. United Healthcare Servs., Inc.*, 2014 WL 1155541, at *2 (E.D. Cal. Mar. 20, 2014) (granting a stay and explaining that "the violation alleged in this case is not ongoing so Plaintiff will suffer no further damages during a stay").

Additionally, the Court notes that numerous courts around the country have granted similar motions to stay in TCPA cases while the D.C. Circuit case is pending. See, *e.g.*, *Coatney*, 2016 WL 4506315, at *2 (granting a stay pending the D.C. Circuit's ruling in *ACA*

*International* and noting that the D.C. Circuit's determination about the definition of automatic telephone dialing system ("ATDS") for purposes of the TCPA will affect the case before the court); *Ricks v. Allied Interstate, LLC*, 2016 WL 4505173, at *1 (M.D. Fla. July 11, 2016) (granting a stay pending the D.C. Circuit's ruling in *ACA International* and noting that the D.C. Circuit's interpretation of ATDS may be outcome-determinative to the case before the court); *Fontes v. Time Warner Cable Inc.*, N2015 WL 9272790, at *5 (C.D. Cal. Dec. 17, 2015) (granting a stay pending the D.C. Circuit's ruling in *ACA International* since the definition of "called party" and the potential safe harbor were potentially dispositive issues in the case before the court); *Gensel v. Performant Techs., Inc.*, 2015 WL 6158072, at *2 (E.D. Wis. Oct. 20, 2015) (granting a stay pending appeal of the FCC's July 10, 2015 Declaratory Ruling); but see *Kafatos v. Uber Techs., Inc.*, 2016 WL 97489, at *2 (N.D. Cal. Jan. 8, 2016) (denying motion to stay case pending D.C. Circuit's ruling in *ACA International* and explaining that "[a]lthough decisions in *ACA International* * * * could be beneficial to this action by clarifying certain questions of law, the parties still require discovery on a number of factual issues regardless of the outcome of those cases"); *Lathrop v. Uber Techs., Inc.*, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) (denying motion to stay case pending D.C. Circuit's ruling in *ACA International* and explaining that since oral argument had not yet been scheduled at the time of the court's ruling, the stay would extend for an indeterminate length of time, especially since the case is likely to be appealed to the Supreme Court); *Byrd v. Equinox Holdings*, 2015 LEXIS 182745, at *2 (C.D. Cal. Aug. 10, 2015) (denying a motion to continue a stay and noting that the appeal of the FCC's ruling is "not a basis on which this Court should extend the stay indefinitely"); *Gregory v. Diversified Consultants, Inc.*, 2015 LEXIS 182743, at *7 (S.D. Cal. Oct. 30, 2015) (declining a stay since the parties agree that "the FCC's ruling presently has full legal authority" despite the filing of petitions for review challenging the FCC's Declaratory Ruling).

Plaintiff argues that the D.C. Circuit's ruling will not simplify the issues presented in this case as the issues have already been decided by courts, the FCC, and Congress. Plaintiff contends that the definition of "called party" is clear from the TCPA, that the FCC ruled on the definition of "called party" in its July 2015 Declaratory Ruling, and that even prior to the FCC's July 2015 Declaratory Ruling, courts have addressed this issue. For example, the Seventh Circuit held in *Soppet v. Enhanced Recovery Co., LLC* that only the current subscriber of a cell phone number could provide consent to be autodialed. 679 F.3d 637, 641 (7th Cir. 2012). The Court does not find this argument persuasive. In *Soppet*, the Seventh Circuit noted that although the FCC declares its understanding of provisions of the TCPA, the FCC had not yet defined the term "called party." *Id.* at 643. And although the FCC did define this term in its July 2015 Declaratory Ruling, the Declaratory Ruling may be vacated by the D.C. Circuit. Thus, the issues presented in this case remain in dispute and the D.C. Circuit's ruling in *ACA International* will shed light on these issues.

Plaintiff also argues that regardless of how the D.C. Circuit rules on the safe harbor rule, it will not bar Plaintiff's claims because even if the safe harbor is extended past the first phone call to when the calling party was put on actual notice, Plaintiff's claims would not be barred because he alleges that he spoke with Defendant on numerous occasions on the phone and advised Defendant that it was autodialing the wrong consumer. However, this argument does not persuade the Court that a stay is not warranted because, as even Plaintiff acknowledges, an extension of the safe harbor would "certainly limit the size of the putative class" and thus simplify the issues in this case.

Finally, Plaintiff argues that it will be prejudiced by the stay because of the lapse of time, memories of witnesses fading, and company turnover at Defendant's place of business. But Plaintiff has not convinced the Court that it will suffer *undue* prejudice from the stay. It is not

7

enough for Plaintiff to rely on the type of prejudice inherent in any stay. See *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014) ("It is undoubtedly true, as many courts have observed, that with age and the passage of time, memories may fade and witnesses may become unavailable. Without more, however, these assertions here are not sufficient to justify a conclusion of undue prejudice.").

**IV.     Conclusion**

For the foregoing reasons, the Court grants Defendant's motion [55] to file *instanter* supplemental authority and to continue the stay pending a decision by the D.C. Circuit in *ACA International v. FCC*, No. 15-1211 (D.C. Cir., argued Oct. 19, 2016). The status hearing set for February 21, 2017 is stricken and no appearances are necessary. The parties are directed to promptly advise the Court when the D.C. Circuit issues its ruling in *ACA International v. FCC* and to file within 14 days of that decision a brief of no more than 10 pages explaining how the ruling affects their respective positions in this case. The Court will set this matter for further status after reviewing the D.C. Circuit's decision and the parties' supplemental briefs.

Date: January 30, 2017

_____
Robert M. Dow, Jr.
United States District Judge